# ROBERT AYERS

*v.*

## LEMUEL MUSSETTER.

1. LUNATIC—*of petition to restore property.* Where a party who has been duly declared a lunatic, files his petition in the Circuit Court in which the original proceedings were had and continued, alleging his sanity, and asks that his property be restored to him: *Held,* that the continuance in the former case and the petition, being between the same parties, and relating to the same subject matter, the proceeding under the petition was, in substance, further proceedings in the original cause.

2. DOCKETING SUIT—*of its form.* The mere form of docketing a suit cannot prejudice the merits in such a case. The appointment of a conservator is in the nature of an information, and is not technically a suit, involving adverse rights, or the recovery of property.

3. TRANSCRIPT OF RECORD—*for the Supreme Court—of its form and requisites.* Where the clerk certifies the original proceedings, and the petition, in parts as two records, it does not change the record as it exists in the court below. It constitutes a transcript in but one case. The manner in which a clerk may divide a record and certify in parts, cannot deprive parties of important rights.

4. PETITION—*the hearing, and herein of the rights of parties.* On the filing of the petition, the court below may require the original case to be re-docketed—an issue

formed and trial of the merits—and if found that the petitioner has regained his reason, order the conservator to return his property to him, otherwise to refuse the relief.

WRIT OF ERROR to the Circuit Court of Hancock county; the Hon. JOSEPH SIBLEY, Judge, presiding.

The facts are fully stated in the opinion.

Messrs. PALMER & HAY, for the plaintiff in error.

Mr. N. BUSHNELL, for the defendant in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

At the October term, 1864, of the Hancock Circuit Court, Robert Ayres was declared a lunatic, on notice, petition and proofs. Defendant in error was duly appointed his conservator, and entered upon the discharge of his duties as such. The cause was continued, and the conservator reported his proceedings therein from time to time.

At the March term, 1867, plaintiff in error, by his next friend, filed his petition, setting forth the former proceedings against him, also that no guardian *ad litem* had been appointed, nor appearance entered, or any attorney had defended the proceeding. The petition alleges that plaintiff in error is now sane and capable of taking care of his property and managing his business, and prays that the conservator may be discharged and his property restored to him, and asks that a jury may be empanneled to try the question of his sanity, and capacity to manage his business affairs.

Defendant in error was duly served with notice of the intended application. The petition was accompanied with the affidavit of a physician, who stated his long and familiar acquaintance with petitioner, and repeated recent interviews

60—46TH ILL.

with him, and examination of his condition, and his belief that plaintiff in error was fully restored to sanity and capable of managing his business.

Defendant in error appeared at the same term of court and entered his motion to dismiss the application. On a hearing of the motion by the court, it was sustained and the petition dismissed at the costs of plaintiff in error. To reverse that order this writ of error is prosecuted, and several errors have been assigned upon the record.

In the view we take of the case, it is regarded unnecessary to discuss but one assignment of error, and that is, the dismissing the petition and the refusal to proceed to a hearing on the application. It is urged that this proceeding was not a continuation of the former, but was an original proceeding, and as such the court below was required to dismiss it. We are unable to perceive any force in this objection. The petition was between the same parties, related to the same subject matter, and recited the former proceedings in the case, and asked a further order, which, when rendered, would have been final. If substance, and not the merest form, is to be observed, then we must hold that the petition was an application for further proceedings in the former case. The form of the docketing a suit can surely never prejudice the merits of a cause. We do not see that the entitling of the original proceeding is strictly accurate, as the proceeding to have a person declared a lunatic and the appointment of a conservator is in the nature of an information, and is not technically a suit involving adverse rights or the recovery of property. An examination of the precedents will show that such causes in other courts are entitled in this form: "In the matter of A. B., a supposed lunatic," etc., 2 Barb. Chanc. Prac., 649.

The petition in this case was docketed, "Robert Ayers, senior, by his next friend, Robert Ayers, junior. Application to have conservator set aside and property restored." And the petition itself does not seem to have been entitled,

but is addressed to the judge of the Hancock Circuit Court. Although the clerk has certified the proceedings in parts, as two records, that by no means changes the record as it exists in the court below. It is manifest that it constitutes a transcript in but one case, and no court can hold that the manner in which a clerk may divide a record and certify it in parts can deprive parties of important rights.

Anciently, and independent of statutory enactment, chancery assumed and exercised jurisdiction in cases of idiocy and lunacy, both as to their persons and property. But such proceedings being expensive and attended with delay, it was found necessary to afford a more speedy and less expensive mode of proceeding, and hence our statutory enactments. The chapter of the Revised Statutes, entitled "Idiots and Lunatics," has conferred power on the Circuit Courts of the State to hear and determine whether a person is a lunatic or idiot, and when so found to appoint a conservator to have control of his property. And the person so appointed is required to make and report an inventory of the estate of his ward, and he is required to report his proceedings to the court when required; and the court is authorized to remove such conservator for mismanagement or neglect, and to appoint another.

The seventh section of the act declares, that if such person shall be restored to his reason, then what remains of his property and estate shall be returned to him; or in case of his death, to his legal representatives. How restored? By the court having control of the estate, would seem to be the obvious intention. The act confers power on the court by its action to deprive him of the custody and control of his property, to require its faithful care and proper application, and to require its custodian to report his proceedings whenever deemed necessary, that it may be known how the trust is being executed, and even to remove the conservator and appoint another, when the interests of the lunatic shall require it. Then, if the legislature intended the court to do all these things, and thus

control the property, why require another more expensive and tedious proceeding to restore the property, when the party is entitled to its possession. Where the act declares that the property shall be returned to the owner, upon his becoming restored to reason, we have no hesitation in saying that it was intended that the court making the previous orders in the case might require the case to be re-docketed, and an issue formed upon the petition and have a trial, and if found that the person has regained his reason, order the conservator to return the property to him, otherwise to refuse the relief and permit the property to remain in the hands of the conservator, subject to the further order of the court.

The judgment of the court below, in refusing to entertain the petition, is reversed, and the cause remanded for further proceedings.

*Judgment reversed.*